Merrimack
No. 80-442

LORETTA STEBBINS

v.

MAURICE STEBBINS

December 8, 1981

*New Hampshire Legal Assistance* (*John MacIntosh* on the brief and orally), for the plaintiff.

*Copithorne & Copithorne*, of Laconia (*David M. Copithorne* on the brief and orally), for the defendant.

BOIS, J.   In this appeal, the plaintiff challenges an order of the Superior Court (*Batchelder*, J.) approving a Master's (*Linda S. Dalianis*, Esq.) report which abolished certain obligations imposed upon the defendant, the plaintiff's ex-husband, under a divorce decree. The plaintiff argues that the trial court lacked authority to modify her ex-husband's obligations, because these obligations were in the nature of a binding property settlement. We agree, and therefore reverse.

The plaintiff and the defendant were divorced in August 1976. The decree of divorce incorporated numerous stipulations which the parties had agreed upon, including provisions relating to child custody, support and division of property. Under the stipulations, the defendant obtained sole ownership of the store and business which he operated in Tilton. He was required to pay the plaintiff $250 per week in child support, and to maintain four life insurance policies under which the plaintiff was to be named as beneficiary.

The stipulations provided that the defendant's obligations were subject to change if and when he sold his business in a profitable

manner. The proceeds from such a sale were to be used by the defendant for the establishment of trust funds in the sum of $2,500 for each of his minor children. The defendant was entitled to keep $5,000 of the remaining proceeds for his personal use, and was required to give the balance of the proceeds to the plaintiff as additional child support. Although the stipulations provided that the initial $250 weekly child support payments would terminate within six months after sale of the business, they specifically acknowledged the right of either party to bring an action for continuation of modified weekly support payments.

The divorce decree generated constant litigation regarding the parties' respective rights and responsibilities thereunder. In September 1977, after the defendant had sold his business, the plaintiff filed a petition with the superior court seeking to enforce the stipulated provisions concerning the trust funds. Following a hearing, a Master (*Peter J. Bourque*, Esq.) found that the defendant had failed to comply with the divorce decree. The master ordered the defendant to set up the trust funds and designated the plaintiff and defendant as co-trustees. The Superior Court (*Brock*, J.) approved this ruling and entered a decree in accordance with the master's decision.

Because of the defendant's continued failure to establish the trust funds and to maintain the life insurance policies, the plaintiff brought a petition for capias in April 1980. The Master (*Linda S. Dalianis*, Esq.) consolidated the plaintiff's petition with a motion, which the defendant had filed, for modification of support payments. On September 9, 1980, the master ruled that the defendant was relieved of his obligation to establish the trust funds and to maintain the life insurance policies. The master denied the plaintiff's motion for reconsideration. When the Superior Court (*Batchelder*, J.) approved the master's rulings, the plaintiff appealed to this court.

The plaintiff contends that the defendant's responsibilities with respect to the trust funds and life insurance policies constituted property settlements which could not be modified by the court. The defendant, on the other hand, claims that these responsibilities were an element of his support obligation and were subject to modification because of changed circumstances.

■■ The distinctions between property settlements and continuing support obligations are well established. *See Erdman v. Erdman*, 115 N.H. 380, 380–81, 341 A.2d 271, 271–72 (1975); *Hamblett v. Lewis*, 114 N.H. 258, 260–61, 319 A.2d 629, 631 (1974) (quoting H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS § 14.8,

at 449–50 (1968)). A property settlement involves a final distribution of a sum of money or a specific portion of the spouses' property. *See, e.g., Twardosky v. Twardosky,* 113 N.H. 438, 439, 309 A.2d 217, 217 (1973); *Lawton v. Lawton,* 113 N.H. 429, 430–31, 309 A.2d 150, 151 (1973). It is not subject to judicial modification on account of changed circumstances. *Dubois v. Dubois,* 121 N.H. 664, 668, 433 A.2d 1277, 1280 (1981); *Grabowski v. Grabowski,* 120 N.H. 745, 747, 422 A.2d 1040, 1042 (1980). We have defined property to possess characteristics such as "cash surender value, loan value, redemption value, lump sum value, and value realizable after death." *Baker v. Baker,* 120 N.H. 645, 648, 421 A.2d 998, 1000 (1980). A property settlement therefore exists when a spouse agrees to make monetary payments which are ascertainable in amount, payable within a definite period, and binding upon the estate of the paying spouse. *Kohler v. Kohler,* 31 Ill. App. 2d 151, 154, 175 N.E.2d 603, 604 (1961).

■ In contrast to property settlements, continuing obligations, such as alimony and child support, involve indefinite payments which remain modifiable by the court. *See Healey v. Healey,* 117 N.H. 618, 621, 376 A.2d 140, 142 (1977). Furthermore, unless otherwise provided, support payments terminate upon the death of either spouse, and the estates of the spouses have no rights or responsibilities concerning these payments. *See Grove v. Frame,* 285 Md. 691, 695, 402 A.2d 892, 895 (1979); 2 NELSON, DIVORCE AND ANNULMENT § 14.02, at 7 (2d ed. 1961).

With these basic principles in mind, we consider the defendant's obligations regarding the life insurance policies and trust funds.

■ Because the record before us does not indicate that the defendant specifically reserved any rights under the life insurance policies, we find that the plaintiff would obtain a vested interest in the policies upon their creation. *See Locomotive Eng'rs Mut. Life & Acc. Ins. Ass'n v. Locke,* 251 App. Div. 146, 149, 295 N.Y.S. 689, 693 (1937), *aff'd,* 277 N.Y. 584, 585, 13 N.E.2d 781, 781 (1938); *cf.* 4 COUCH ON INSURANCE 2d § 27:56, at 555 (Anderson ed. 1960). The plaintiff's vested interest in the policies, unlike alimony, would be realizable after the death of either spouse. Furthermore, the total amount of the policies would be ascertainable, and the plaintiff's interest would have redemption value. Certainly, these factors point in the direction of a property settlement. *See Sheffield v. Sheffield,* 310 So. 2d 410, 413 (Fla. App. 1975).

■ The trust funds also possessed property-like characteristics. We find, on the facts before us, that the provisions for the estab-

lishment of the trust funds created irrevocable rights in the beneficiaries, the minor children, because the defendant did not reserve the power to modify the trust provisions. *Cf. Minot v. Tilton,* 64 N.H. 371, 375, 10 A. 682, 685 (1887). The $2,500 trust funds therefore would have a clear and definite lump sum value which would be realizable after death.

■■■ In determining the nature of provisions within a stipulated agreement, we must consider the intent of the parties. *See, e.g., Lawton v. Lawton,* 113 N.H. at 430, 309 A.2d at 151; *cf. Mamalis v. Bornovas,* 112 N.H. 423, 428, 297 A.2d 660, 663 (1972). In this case, we find no evidence in the record that the parties intended to permit subsequent modification of the life insurance and trust fund provisions. While the stipulations provided that certain funds were to be used "as support for the care and welfare of the minor children," they did not similarly designate the life insurance policies and trust funds. In determining the intentions of the parties, we must view the agreement as a whole. *Manchester Bank v. Industrial Dev. Auth.,* 119 N.H. 14, 16, 396 A.2d 558, 560 (1979). Based on the conspicuous absence of language defining the life insurance and trust fund obligations as support, we hold that the parties intended these obligations as a binding property settlement. The master therefore erred when she modified these obligations.

The defendant argues in the alternative that the master's decision abolishing the trust fund obligation was correct, even if the trust funds were part of a property settlement. Although he admits that an obligation to establish the trust funds would arise upon the profitable sale of his business, he claims that the obligation does not exist because the record contains no evidence regarding the occurrence of the sale. He also argues that the plaintiff lacked standing to enforce the trust fund obligation, and that the failure to establish the trust funds did not constitute sufficient grounds for invoking the court's contempt power.

■■ ■■ We dismiss these arguments. We hold that the September 1977 master's report implicitly supports a finding that the defendant sold his business and obtained sufficient proceeds for establishment of the trust funds. As a result, the defendant was obligated to create the trust accounts. We decline to rule whether the defendant's failure to create the trust accounts warranted imposition of contempt sanctions, because the court never found the defendant in contempt for this reason. The issue is therefore not ripe for decision by us. *Cf. Town of Bedford v. Lynch,* 113 N.H. 364, 366, 308 A.3d 522, 523 (1973). Finally, we hold that the plain-

tiff, as a party to the stipulated agreement, had standing to enforce the agreement's provisions for creation of the trust accounts. *Cf. Porter v. Raymond*, 53 N.H. 519, 526 (1873).

*Reversed and remanded.*

BROCK and BATCHELDER, JJ., did not sit; the others concurred.