Hillsborough-northern judicial district
No. 96-229

FLORENCE BONNEVILLE

v.

EDWARD BONNEVILLE & a.

November 19, 1997

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*William E. Brennan* and *Kathleen A. Hickey* on the brief, and *Mr. Brennan* orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Thomas J. Donovan* and *Mark M. Whitney* on the brief, and *Mr. Donovan* orally), for the defendants.

BROCK, C.J. The defendants, Edward Bonneville and Bonneville Realty, Inc. (BRI), appeal a decision of the Superior Court (*Barry*, J.) construing the divorce decree of Edward Bonneville and the plaintiff, Florence Bonneville. The court held that the divorce decree did not require the plaintiff to relinquish immediate control of her BRI stock, and therefore BRI owes the plaintiff forty percent of the corporate distributions it made between December 1990 and May 1993. We reverse.

Edward Bonneville and the plaintiff were married in 1950. BRI was incorporated during the marriage. At the time of the divorce in

December 1990, the plaintiff was a forty percent shareholder of BRI, while Edward was BRI's president, sole director, and remaining shareholder.

The divorce decree provided each party a share of the real and personal property, required Edward to pay the balance of a mortgage on real estate transferred to the plaintiff, and required Edward to pay a cash settlement to the plaintiff. In paragraph 2 of the decree, the court ordered that "[s]ubject to paragraph #6 below, [Edward] is awarded all the stock of Bonneville Realty, Inc." Paragraph 6 ordered Edward to pay the plaintiff $1,000,000 immediately and $650,000 plus nine percent interest per annum within two years, secured by a mortgage on Edward's stock interest in BRI. A court-approved stipulation for settlement, executed by the plaintiff and Edward, amended paragraph 6 so as to order Edward to pay the plaintiff $500,000 no later than December 28, 1990, $1,000,000 no later than January 15, 1991, and $100,000 within two years. The amended terms also provided that if Edward failed to pay on or before January 15, 1991, he must pay interest at the rate of eleven percent per annum on the $1,000,000 and execute a mortgage to the plaintiff on his stock interest in BRI. Finally, the stipulation amended the language in paragraph 6 prohibiting Edward from "transferring, encumbering or hypothecating any of the real estate owned by him and any of his stock interests" in BRI or Bonneville & Son, Inc. to allow Edward to use the real estate or stock to "effectuat[e] the provisions of this paragraph."

In May 1993, Edward paid the plaintiff $1,100,000 plus $15,008.64 in interest, calculated at eleven percent per annum, and the plaintiff signed over the BRI stock. The plaintiff filed suit in March 1994 against Edward, as a shareholder and director of BRI, and against BRI to recover stock dividends distributed by BRI. The trial court found that the decree did not require the plaintiff to transfer her BRI stock to Edward immediately and that the plaintiff "failed to support a claim that [Edward] is liable, in his individual capacity, for the incorrect distribution." The trial court determined that BRI wrongfully distributed all of the stock dividends to Edward and ordered BRI and Edward, as BRI's director, to pay the plaintiff $311,699, the amount to which she was entitled as a forty percent shareholder.

■ The primary issue on appeal is whether the divorce decree required the plaintiff to immediately transfer ownership of her BRI stock. The plaintiff urges us to review the trial court's decision for abuse of discretion or error of law, the standard of review we use

when reviewing a trial court's determination of property division. *See Grandmaison v. Grandmaison*, 119 N.H. 268, 270, 401 A.2d 1057, 1058-59 (1979). This case requires an interpretation of the divorce decree, not a review or modification of the property distribution, so we interpret the decree *de novo. See Estate of Frederick v. Frederick*, 141 N.H. 530, 531, 687 A.2d 711, 713 (1996); *see also Byrne v. Ackerlund*, 739 P.2d 1138, 1143 (Wash. 1987) (interpretation of divorce decree is question of law).

In ascertaining the meaning of the divorce decree and the stipulation, we look to the plain meaning of the language and at the meaning of the language in the context of the entire decree. *See Frederick*, 141 N.H. at 532, 687 A.2d at 713. Subsidiary clauses are construed so as not to conflict with the primary purpose of the decree. *See Parkhurst v. Gibson (Parkhurst)*, 133 N.H. 57, 63, 573 A.2d 454, 458 (1990).

The primary purpose of a property settlement is to establish a final and equitable distribution of the marital property. *See, e.g., McSherry v. McSherry*, 135 N.H. 451, 453, 606 A.2d 311, 313 (1992). We interpret property settlements so as to avoid future conflicts between the parties and to eliminate joint ownership of a business, whether operated primarily by one spouse or by both. *See McAlpin v. McAlpin*, 129 N.H. 737, 742, 532 A.2d 1377, 1380 (1987); *Grandmaison*, 119 N.H. at 271, 401 A.2d at 1059. In order to dissolve joint ownership of assets, a court may award title to one party and a mortgage to the other until the occurrence of a particular event, *see Leary v. Leary*, 137 N.H. 161, 165, 623 A.2d 1346, 1348 (1993), or upon the failure of one party to meet the terms of the decree, *see Baker v. Baker*, 444 A.2d 982, 987 (Me. 1982). A lien or mortgage is preferable to co-ownership because it "is merely an encumbrance to secure an obligation and involves no characteristics of co-ownership." *Byrne*, 739 P.2d at 1141. Thus, we will generally construe ambiguous language in a decree in favor of a mortgage rather than co-ownership.

In this case, paragraph 2 of the divorce decree awarded all BRI stock to Edward "[s]ubject to paragraph 6." Although the term "subject to" may commonly indicate a condition precedent, *see Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 396, 628 A.2d 260, 262 (1993), "conditions precedent are not favored," and we will not infer that they were intended unless required by the plain language of the decree or stipulation. *In re Estate of Kelly*, 130 N.H. 773, 781, 547 A.2d 284, 289 (1988); *cf.*

*Perron v. Perron*, 122 N.H. 855, 856, 451 A.2d 1282, 1283 (1982). Here, the remaining language in paragraph 2 awarding Edward all of the BRI stock indicates an immediate transfer of ownership to Edward. *See generally McSherry*, 135 N.H. at 453, 606 A.2d at 313 (property settlements are not continuing orders and create vested rights). The term "subject to" refers to paragraph 6, which orders Edward to pay a cash settlement to the plaintiff and requires that any deferred payments include interest and be secured by a mortgage on Edward's stock interest in BRI. The stock award is also "subject to" the limitations in paragraph 6, including the plaintiff's mortgage on Edward's stock interest in BRI and the prohibition on "transferring, encumbering or hypothecating . . . any of his stock interests in either of the two Bonneville Corporations" for the life of the mortgage. Neither the original decree nor the stipulation indicate that the plaintiff retained any rights to the disputed BRI stock, other than a security interest. Paragraphs 2 and 6 refer only to Edward's stock interest in BRI and his right to exercise control over the BRI stock.

Edward's inability, and reluctance, to timely pay the cash settlement does not justify amending the final terms of the decree. *See Johnson v. Coe*, 142 N.H. 182, 187-88, 697 A.2d 939, 943 (1997). Furthermore, the plaintiff's unwillingness to relinquish ownership of the stock does not affect its transfer to Edward because the transfer occurred by operation of law. *See* RSA 382-A:8-313(1) comment 1 (1994) (transfers by operation of law not subject to Article 8 of Uniform Commercial Code); *Durkee v. Durkee-Mover, Inc.*, 428 N.E.2d 139, 141 (Mass. 1981) (stock transfer pursuant to divorce decree is assignment by operation of law). Similar to a title transfer of a house subject to a mortgage in favor of the spouse relinquishing title and equity, the decree and stipulation awarded Edward immediate ownership of all BRI stock subject to a mortgage interest in favor of the plaintiff. *See Leary*, 137 N.H. at 163, 623 A.2d at 1347; *see also Baker*, 444 A.2d at 987 (decree awarded ownership and record title of family home to husband and mortgage in favor of wife). We conclude that the court's decree contemplated the immediate award of the BRI stock to Edward and intended that the plaintiff be given only a security interest in the stock until such time as Edward paid the full cash settlement plus interest.

BRI appropriately distributed dividends solely to Edward in 1991 and 1992 because all BRI stock was transferred to Edward by operation of law on December 22, 1990, the effective date of the decree. Thus, we reverse the trial court's order that the decree and stipulation "did not require the plaintiff to immediately surrender

her shares of stock" and its award of dividend distributions in the amount of $311,699 to the plaintiff.

After reviewing the plaintiff's remaining arguments, we conclude that they are without merit and warrant no further discussion. *See, e.g., Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Reversed.*

THAYER, J., did not sit; the others concurred.